On the motion to reverse the decision of the Circuit Judge, refusing the motion to set aside the return of the commissioners, the opinion of the Court was delivered by
Frost, J.
The third ground of objection to the return of the commissioners is, that it does not state the nature of the damages assessed; and that the return is incomplete and insufficient. *111 The Act (11 Stat. 324) does require the commissioners, in making the valuation, to take into consideration “ the loss or damage” and also “the benefit or advantage” which may-result to the owner of the land by the construction of the road, and to “state particularly the nature and amount of each.” The return of the commissioners is incomplete, from the omission to set out the particulars of damage, as required by the Act. But the omission is an informality which may be amended by requiring the commissioners to supply, in the return which they have made, the particulars of the damage which they assessed. The motion was, not to amend, but to set aside the return and vacate the proceedings of the commissioners, in order that the subject should be re-committed to them, or to others to be appointed in their stead. The return cannot be set aside unless the commissioners proceeded illegally or wrongfully in making the valuation. If their proceedings be regular and. conformable to the directions of the Act, but the return be incomplete, the proper course is, to order the return to be amended; not set aside.
The first and second grounds allege error in the opinion of the Circuit Judge, that when the valuation is made after the Company has entered on the land, and progressed with the construction of the road, until the road bed is nearly completed, the owner of the land may require the commissioners to appraise and assign to the Company one hundred feet of land on each side of the road.
The 10th and 11th sections of the charter of the Company are not free from complexity and confusion; and those clauses of the sections which give rise to the dispute in this case, are especially obscure. In construing the charter, the parties to the litigation and the power claimed should not be disregarded. The Company must shew a clear and express grant, by the charter, of the power which it claims. The Company cannot extract a privilege from a doubtful construction. The power which is claimed is no less than the delegation of the eminent domain of the State to take private property, without the con *112 sent of the owner, and should be admitted with jealous allowance. The delegated exercise of the power is subject to many temptations to abuse. While the character of a public work is attributed to the road, which the Company has undertaken to construct, yet the enterprise has for its immediate object the profit of the stockholders. Every instance of the exercise of the power presents an active conflict between the interest of the Company and the interest of the citizen, whom the Company disseizes of his freehold. In this conflict, it is the duty of the Court to protect the citizen, by a strict construction of the terms of the grant to the company, and by enforcing, on the part of the Company, compliance with the conditions and limitations of the grant.
By the charter, the Company may purchase land for the purposes of the road; “ or if the same cannot be purchased, it may be taken by the Company, at a valuation to be made by commissioners.” The valuation may be made before or after the “ construction” of the road. If the Company purchase, the quantity of land they may take is determined by their contract. If the land be taken at a valuation, made before the “ construction of the road,” the Company may take any quantity which it may deem necessary for the purposes of the road. But the 10th section provides that “in all assessments, made by the commissioners or jury, as aforesaid, after the construction of the road, or of the part thereof upon the land to be valued, reference shall be had to the true value of the land at the time of the erection.of the said road, or part thereof; and the use thereof by the said Company, for the purposes of the said road, shall be considered as an actual possession of the said land, covered by the said road, and the space of one hundred feet, on both sides of the said road, as aforesaid.” By the 11th section it is provided that “ in the absence of any written contract between the Company and the owner of the land through which the said road may be constiucted, in relation to the said land, it shall be presumed that the land upon which the said road may be constructed, together with one hundred feet on each side of the centre of the said *113 road, has been granted to the said Company by the owner “ and the Company shall have good right and title to the same unless an action be brought by the owner, within two years “next after the construction of the road” on his land.
The questions which arise out of these recited passages are, first, when the valuation is made “ after the construction” of the road, may the owner require the Company to take one hundred feet on each side of the road; and, secondly, what period of time, or what progress in the work of building the road, is meant by “ after the construction of the road.”
Where the Company, without purchase, or a previous valuation of the land which may be necessary for the road, enter on the land of a citizen, what is the extent of the Company’s right of possession or “ use of the land for the purpose of constructing the road ?” Has the Company license to use, occupy and possess the whole tract through which the road may pass í The charter does not expressly give such license. But it seems to give a license to the Company to enter on land without previously defining, by valuation or otherwise, what quantity of land it intends to use, occupy or take for the purposes of the road. How, then, shall the owner of the land protect his possession against the unlimited use and occupation of his entire tract, by servants and agents of the Company 1 When the right of entry is allowed to the Company, if a limit be not assigned by law, to the possession it may take and hold for the purposes of the road, frequent and violent collisions between the Company’s agents and the owner of the land, would probably ensue. This difficulty is not provided for, unléss it be by the recited clause of the 10th section, that in assessments to be made “ after the construction of the road,” the use “ thereof (that is of the land) by the Company, for the purposes of the said road, shall be considered as an actual possession of the land, covered by the road, and the sjmce of one hundred feet on both sides of the road.”
When it was designed, in preparing the charter, to provide land for the purposes of the road, along its whole extent, one hundred feet, on both sides of the road, was not an inconside- *114 Tate ^provision. The making of the necessary embankments and excavations might require so much. The value of the land along the road, except for very short distances, in the approach to villages and towns, was not a consideration which could materially affect the quantity to be allowed or taken by the Company.
The presumption of a grant to the Company from the owner of the land, if suit be not brought within two years after the construction of the road, includes two hundred feet along the road. The actual possession must support the presumption and defines the quantity of land acquired by it.
This actual possession must be construed to begin at the time when the Company enters on the land. The actual possession is given “ for the purposes of the road.” These purposes require possession of the land more urgently for the making, than for the employment of the road when completed. If the Company may use and occupy, without limit, the land through which the road may be made, until the road is completed, there would, then, be no necessity to extend the Company’s actual possession to any prescribed distance from the road, because what may then be required can be accurately ascertained. Every motive for defining the extent of the Company’s actual possession, when there has been no purchase or previous valuation, requires that the possession should commence from the entry of the Company for the purpose of building the road.
Adopting this construction of the Act, the remaining question is, what period of time, or what stage in the progress of making the road, is intended by the provision that, in all assessments made, “ after the construction of the road, or of the part on the land to be valued, the use of the land for the purposes of the road shall be considered as an actual possession of the Company, to the extent of one hundred feet, on both sides of the road.”
The argument from the meaning of the word “ construction” rests the interpretation of the Act on too narrow a foundation. Besides, it is not conclusive. Construction does not always mean completion, the sense attributed to it in the argument of *115 the counsel for the appellants. It sometimes means “ the act of constructing.” It is used in this sense in the same 10th section, where it is provided that an appeal from the valuation by the commissioners “ shall not prevent the Company from proceeding in the construction of the road.” Here “construction” is used in the sense of the “ act of building,” or the “ progress of construction.” It has been argued that “construction” in that clause of the section which limits the right of action of the owner to two years, “ next after the construction of the road,” means “ completionand that it must have the same meaning in the clause under consideration. If “ construction,” in the connection relied on, be admitted to mean “completion,” the conclusion is not necessary that it has the same meaning in the connection in which it has to be considered in this case. The meaning of a word is frequently varied by its dependence in the sentence. Of this, an example has been given in the meaning of the very word in controversy. But the loose and inaccurate use of language, in the 10th and 11th sections, must detract much from any force of the argument which would determine the design and scope of the charter from the effect of a word. In the clause we are considering, when the assessment is made “ after the construction of the road,” the commissioners are directed to have reference to the time of the “ erection of the road.” Now, it may as well be argued that “ erection” means “completion,” as that “construction” has that meaning. Yet it is plain that “ erection” means some stage in the progress of building before “construction.”
It must be admitted that the verbal argument does disturb the conclusion to be deduced from the design, scope and objects of the charter, that the actual possession of two hundred feet must commence at the time of entry by the Company on the lands, for the purposes of the road ; and that if the valuation be made, after such entry, the Company may be required to take and pay for the land of which they have had the actual possession and use. But in the construction of the charter, when the strict signification of a word is opposed to the apparent intention, it *116 is proper to maintain the design and purposes of the charter even by neglect of the meaning of the word.
The actual possession and use of the land by the Company, from the time of entry, is more important in determining the quantity of land which the owner may require to be valued and assigned to the Company, than the time when the valuation may be made. The Company has the benefit of actual possession, for the purposes of the road and for the presumption of a grant. No complaint of hardship can be made by the Company, that it should be required to keep and pay for the land of which it has had the actual occupation; for they might have avoided any liability to do so. It would be a greater hardship on the owner of the land, after the Company has had the actual possession and use of two hundred feet of his land for the purpose of constructing their road, that, when the road is completed, the Company should be supported in the claim to pay for the least possible quantity of land beyond the base line of the embankment.
The motion is refused.
Evans, Wardlaw and Withers, JJ. concurred.
On the motion for a new trial, the opinion of the Court was also delivered by
Frost, J.
The first ground of appeal has been decided in the opinion already delivered.
The charter of the Company requires the commissioners, in making the valuation of land, to take into consideration, “ the loss or damage” and also “ the benefit and advantage” which may result to the owner of the land from the construction of the road. By the 10th section, when “ the valuation is made after the construction of the road, or of the part thereof on the land to be valued,” “ reference shall be had to the value of the land, at the time of the erection of the said road, or of the part thereof on the land to be valued.” There is, at least, as much doubt respecting the period of time or progress in the building of the road which is intended by “ the time of the erection of the said road,” as by the expression “ after the construction of said road.” *117 By “the time of the erection of the said road,” is obviously intended a time preceding “ the construction of the road.” What precise period is meant, there is nothing else in the charter to aid the Court in determining. Nor is it necessary for this case, that it should be determined. It seems to have been assumed, that the value of the land might have varied between the periods indicated. The clause under consideration is no more than a direction to the commissioners to appraise the land, according to its value at the time of the erection of the road; and not to assess its value at the time of the appraisement. They are not directed to allow to the owner the value of the land at the time of the erection of the road, and no more. The consideration of damages and benefits, resulting from the construction of the road, is clearly not to be excluded in the valuation of the land, in the case to which the special direction applies.
The motion is refused.
Evans, Wardlaw and Withers, JJ. concurred.
O’Neall, J. being president of the Company, did not hear the case.

Motions refused.